

In The

Court of Appeals

Seventh District of Texas at Amarillo

---

No. 07-25-00123-CR

---

AUSTIN BOVEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 16th District Court
Denton County, Texas[1]
Trial Court No. F22-2278-16, Honorable Sherry Shipman, Presiding

---

November 12, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Austin Bovey, appeals from his conviction for the offense of murder[2] and sentence of imprisonment for life.  By his appeal, Appellant contends that the

---

[1] This cause was originally filed in the Second Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 19.02.

evidence was insufficient to support his conviction because no reasonable jury could have rejected his claims of insanity and self-defense. We affirm the trial court's judgment.

## BACKGROUND

On April 11, 2022, Appellant went to the house of his former girlfriend, Christina, to visit his son, J.B. Christina was married to Trenton McCoy. After talking to his son, Appellant went to speak with Trenton. Appellant disapproved of Trenton's parenting style and the conversation quickly got heated. The argument turned physical with Trenton yelling at Appellant to get out of his house, while physically pushing Appellant toward the door. At some point, Appellant and Trenton began walking down the hallway toward the master bedroom. Trenton yelled to Christina to get his gun. Appellant had his hand on his hip, where he kept his gun. Once inside the bedroom, Appellant shot and killed Trenton.

Appellant was charged with the offense of murder. Appellant argued that he shot Trenton in self-defense and that he was legally insane at the time of the shooting. The jury was instructed on these defensive issues. The jury impliedly rejected these defensive theories when it returned a verdict finding Appellant guilty. Appellant timely appealed the ensuing judgment.

## INSANITY DEFENSE

Appellant contends that the evidence is not sufficient for a reasonable jury to find that he was not insane at the time he killed Trenton.

2

Standard of Review

Appellant challenges the sufficiency of the evidence relating to his insanity affirmative defense. TEX. PENAL CODE § 8.01(a). Affirmative defenses in a criminal case are evaluated for legal and factual sufficiency under the civil standards of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

In reviewing the legal sufficiency of the evidence supporting an adverse finding to an affirmative defense, we look for evidence that supports the jury's rejection of the affirmative defense while disregarding evidence to the contrary. *Id.* at 669. If no evidence supports the jury's finding, we then search the record to determine whether the evidence establishes the affirmative defense as a matter of law. *Id.* at 669–70. "Only if the appealing party establishes that the evidence conclusively proves his affirmative defense and that no reasonable jury was free to think otherwise, may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense." *Id.* at 670 (internal quotation marks omitted).

In reviewing the factual sufficiency of the evidence supporting the jury's rejection of an affirmative defense, we review the entire record in a neutral light to determine whether the evidence supporting the affirmative defense greatly outweighs the evidence supporting the jury's rejection of the affirmative defense. *Id.* at 671. However, in conducting this review, we may not usurp the function of the jury by substituting our judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id.* If an appellate court sustains an appellant's factual-sufficiency claim, it

3

must set out the relevant evidence and explain precisely how the contrary evidence greatly outweighs the evidence supporting the verdict. *Id.*

Law

"It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE § 8.01(a). In this context, "wrong" means "illegal." *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). However, we begin with the presumption that a criminal defendant is sane and intends the natural consequences of his acts. *Id.* at 591–92. The burden to prove that he was insane by a preponderance of the evidence is on the defendant. TEX. PENAL CODE § 2.04(d); *Ruffin*, 270 S.W.3d at 592. Proof of a mental disease or defect alone is not sufficient to establish insanity. *McAfee v. State*, 467 S.W.3d 622, 636 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Rather, if the accused knows that his conduct is illegal by societal standards, then he understands that his conduct is wrong, even if, due to a mental disease or defect, he thinks his conduct is morally justified. *Ruffin*, 270 S.W.3d at 592.

Analysis

The record evidence establishes that Appellant suffers from a mental disease or defect, namely, schizophrenia. However, the record includes significant evidence supporting the jury's conclusion that Appellant was not insane at the time of the shooting. Immediately after the shooting, Appellant fled the scene even though his son urged him to stay and "face his consequences like a man." Appellant's mother testified that when Appellant called her immediately after the shooting, he spoke clearly and cognitively and

4

that he was taking his medication as prescribed. The day after the shooting, Appellant told his mental healthcare provider that he shot Trenton in self-defense and that he did not hear voices at the time of the shooting. In an interview on May 6, 2022, Appellant admitted that he should have left the house during the altercation and did not mention having any mental issues on the night of the shooting. Two testifying experts reached opposing conclusions: one that Appellant was unaware of the wrongfulness of his conduct at the time of the shooting and the other that Appellant's mental illness did not play a significant role in the shooting. Both experts provided evidence that could support a conclusion that Appellant was malingering.

Conclusion

Considering all the record evidence in the light most favorable to the verdict, Appellant did not conclusively establish that he was insane at the time that he shot Trenton. Likewise, considering all the evidence in a neutral light, we conclude that the evidence of Appellant being insane at the time of the shooting does not greatly outweigh the evidence that he was aware that shooting Trenton was illegal. Thus, we find the evidence both legally and factually sufficient to support the jury's rejection of Appellant's insanity claim.

**SELF-DEFENSE**

Appellant also contends that the evidence is insufficient to allow the jury to reasonably reject his claim that he shot Trenton in self-defense.

5

<u>Standard of Review</u>

Unlike insanity, self-defense is a defense and not an affirmative defense. *Borton v. State*, 683 S.W.3d 459, 467 (Tex. App.—San Antonio 2023, no pet.) (citing *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). Consequently, the issue of self-defense is a fact issue to be determined by the jury. *Id.* at 465. A finding of guilt by the jury implies an affirmative rejection of the self-defense theory. *Saxton*, 804 S.W.2d at 914.

"Because the State bears the burden of persuasion to negate self-defense by proving its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of self-defense under the *Jackson v. Virginia* standard." *Rankin v. State*, 617 S.W.3d 169, 182 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010), and *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The *Jackson* standard provides that the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Jackson*, 443 U.S. at 319, and *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009)). In viewing the evidence in the light most favorable to the verdict, we do not reevaluate the evidence's weight and credibility as those are the exclusive province of the jury. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

In applying this standard to the jury's rejection of a defendant's claim of self-defense, we examine the evidence to determine whether a rational jury could have

rejected the defense beyond a reasonable doubt. *Borton*, 683 S.W.3d at 465. First, we determine whether the appellant presented some evidence to support a claim of self-defense. *Id.* If so, then we assess whether the State proved its case beyond a reasonable doubt, even when considering appellant's necessity defense. *Id.* Ultimately, we must determine whether the jury's verdict can be considered rational based on the evidence as a whole. *Id.*

Law

A defendant is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31(a). A reasonable belief is one that would be held by an ordinary and prudent person in the same circumstance as the actor. *Id.* §1.07(a)(42). Verbal provocation alone does not justify the use of force. *Id.* § 9.31(b)(1). Likewise, the use of force is not justified if the defendant provoked the other's use or attempted use of force unless the defendant abandons the encounter, and the other continues to use unlawful force against the defendant. *Id.* § 9.31(b)(4). The use of deadly force is justified if the use of force is justified, and the actor reasonably believes deadly force is immediately necessary. *Id.* § 9.32(a).

Analysis

In his brief, Appellant concedes that there is sufficient evidence in the record for the jury to have found the essential elements of murder beyond a reasonable doubt. *See Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021) ("Confession and

7

avoidance is a judicially imposed requirement that requires defendants who assert a justification defense to admit, or at a minimum to not deny, the charged conduct."); *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (defendant "cannot both invoke self-defense and flatly deny the charged conduct").

Testimony was consistent that Appellant and Trenton got into an argument in the living room. Both children testified that Trenton told Appellant to leave the house.[3] Some degree of a physical altercation ensued but it is unclear who started this physical altercation[4] or the extent of it. Both Appellant and Trenton moved down the hallway toward the master bedroom.[5] Trenton yelled to his wife to get his gun from the closet, but she was asleep and did not respond. Appellant moved down the hallway while reaching for a gun he kept on his hip. There was no evidence that Trenton ever took possession of a gun during the entirety of this episode. Also, the evidence established that Trenton did not assault Appellant in the master bedroom. The jury heard testimony indicating that Appellant's version of the events leading to the shooting of Trenton changed over time.

## Conclusion

Considering all of the evidence, we cannot conclude that the jury's rejection of Appellant's self-defense claim was irrational. *Borton*, 683 S.W.3d at 465. In fact, there is minimal evidence that supports Appellant's claim that he acted in self-defense. We

---

[3] A person commits criminal trespass if the person remains on property of another without effective consent and the person received notice to depart but failed to do so. TEX. PENAL CODE § 30.05(a).

[4] The children testified that Trenton attempted to physically remove Appellant from the house.

[5] While some dispute exists regarding who went down the hallway first, the relative position of the parties in the master bedroom would allow a reasonable inference that Trenton went down the hallway and Appellant followed him.

conclude that the State proved its case beyond a reasonable doubt, even considering Appellant's necessity defense.

## CONCLUSION

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.